Gary L. Lassen (#5259)
LAW OFFICE OF GARY L. LASSEN, PLC
2020 North Central Avenue
Central Park Square, Suite 1100
Phoenix, AZ 85004
Telephone: (602) 252-1205
Facsimile: (602) 254-6982

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| DENNIS L. TURNEY, a married man, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **(Employment Discrimination, Title VII of 42 U.S.C. §2000; Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et. seq.; Arizona Civil Rights Act, A.R.S. § 41-1461, et. seq.)** |
| HYUNDAI CONSTRUCTION EQUIPMENT USA, INC.; HYUNDAI HEAVY INDUSTRIES, Ltd.; JOHN LIM, an individual, | |
| Defendants. | |

COMES NOW the Plaintiff, Dennis L Turney, by and through undersigned counsel, and for his Complaint alleges as follows:

**JURISDICTION AND PARTIES**

1. This is an employment discrimination Complaint arising out of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), et seq. (the Age Discrimination and Employment Act, 29 U.S.C. §621, et seq., as well as the Arizona Civil Rights Act, A.R.S. § 41-1461, et. seq.) This Court has jurisdiction to hear and determine this action and to grant the relief requested pursuant to 28 U.S.C. §§ 1331 and 1343, Title VII of the Civil Rights Act of 1964, as amended, 32 U.S.C. 2000(e), et. seq. (Title VII which provides for compensatory, injunctive, and other relief as may be appropriate against discrimination in employment.

2. The events complained of by Dennis L. Turney occurred while residing within Arizona, and Dennis L. Turney was an employee of Hyundai and paid for and assigned to the position of Western Regional Sales Manager for Hyundai in the United States of America. Under 42 U.S.C. § 2000(e), Title VII, as well as 28 U.S.C. § 1391, venue lies with the District Court of the State of Arizona.

3. Plaintiff, Dennis L. Turney, is a married man over the age of 55 years residing in Pinal County, Arizona. Mr. Turney had been employed continually as a sales representative of Hyundai since being re-hired in 2003.

4. Defendant Hyundai Construction Equipment USA, Inc. is a wholly owned subsidiary of Hyundai Heavy Industries, Inc. ("HHI") and was operated as the alter ego of Hyundai Heavy Industries, Ltd., a Korean conglomerate, with its worldwide headquarters in Ulsan, South Korea (Annual Report 2007).

5. Defendant John Lim is the President of Hyundai Construction Equipment USA, Inc. and Executive V.P. of HHI – Construction Equipment Division. Defendant John Lim (Jong-Kook Lim) has full authority over the day to day operations of Hyundai Construction Equipment USA, Inc. and reports only within the hierarchy of the conglomerate to higher ups in the HHI, or the Construction Equipment Division of HHI.

**GENERAL ALLEGATIONS**

6. Dennis L. Turney has been an employee of Defendants since 2003. Dennis L. Turney has filed a Charge of Discrimination against Defendants. (See Exhibit 1 attached hereto and incorporated herein by reference.)

7. Administrative remedies have been exhausted and Dennis L. Turney has requested and received a right to sue letter. (See Exhibit 2 attached hereto and incorporated herein by reference.)

8. Dennis L. Turney, during the course of his employment with defendants, has admirably performed, and has evidenced a substantial knowledge of the construction and heavy equipment industry, and has allowed Defendants to enjoy a presence in the

Western United States where before his employment no such successful relationship existed with dealers. Plaintiff Dennis L. Turney is widely known as a knowledgeable, honest, hardworking, and capable sales representative in this industry.

9.      Dennis L. Turney alleges on information and belief that because of his speaking out and raising concerns about a regular unethical, immoral and improper activity on the part of Koreans and/or Korean Americans in management positions at Hyundai in downloading and/or observing pornography on company computers, and engaging in other improper activities, that he has suffered discrimination and retaliation.

10.     Mr. Turney was asked at or about January 2005 to take the position of National Sales Manager with Defendant Hyundai, but he declined, as such would require his relocation to Chicago, and the Defendants did not receive such news happily and have since that time engaged in retaliatory actions toward Plaintiff.

11.     Defendant Hyundai has a history of discrimination against non-Koreans or Korean Americans, and has engaged in a pattern and practice during Mr. Turney's tenure in the company of treating Koreans and Korean Americans differently and more favorably than non-Korean or non-Korean Americans based upon their race or national origin.

12.     On or about October, 2008, Mr. Turney was called on his cell phone by Kirk Gillette, the sales and marketing manager of Hyundai, and the person Mr. Turney reported directly to. On the phone along with him was Kevin Maher, controller and director of HR. Mr. Turney was told in this mobile phone call that October 23, 2008 would be his last day. He was told he was being let go for non-performance matters as a layoff. However, on or about November 3rd, less than two weeks after his firing, Mr. Turney learned that Hyundai had hired a younger, much less experienced replacement and that this person had been in the Chicago office and interviewed during the week of September 15, 2008. Just a few weeks prior to this Kevin Maher intentionally facilitated a loan from Mr. Turney's 401K account.

13. Up until the time of his firing on or about October 23rd, Mr. Turney had been the oldest and most experienced person responsible for field sales for Defendant Hyundai. He had the highest level of education of any regional sales person and the longest tenure of any non-Korean or Korean-American sales staff except Mr. Stan Park. Mr. Stan Park began with Hyundai having been authorized directly from Korea to work in Chicago in the marketing department. He worked for Mr. Turney in the marketing department during Mr. Turney's initial term of employment phase with Hyundai. Mr. Stan Park assumed the position of Regional Sales Manager and he retained that position at a time when all American and/or non-Korean managers were terminated by Hyundai. No Korean national person in field sales has ever been terminated by Hyundai Construction Equipment USA, Inc.

14. In July, 2008, Hyundai had its mid-year sales meeting in Kemper Lakes. At no time did anyone ever mention anything negative to Mr. Turney about his performance or of any failure to meet expectations on his part. At that time, there were changes made to the sales compensation plans and Mr. Turney learned that others were required to sign review documentation while also recognizing plan changes. Mr. Lim, the President of Hyundai Construction Equipment USA, Inc., traveled with Dennis L. Turney in LA on or about May 27, 2008. Mr. Lim is a Korean national, and described himself to Mr. Turney as a power player who was hired at the urging of Mr. M J Chung, a major stockholder, and one of the sons of the founder of Hyundai Heavy Industries, the former Chairman Chung.

15. Mr. Turney was present with both the National Sales and Marketing Manager, Mr. Kirk Gillette and John Lim, President of Hyundai, during the week of October 5, 2008. At no time did either mention they had any issues or concerns relative to Mr. Turney's performance or character. In fact, during that entire time together during that week, at which time they called on dealers and clients, they commented entirely positively on his performance and knowledge of his territory.

16.     Mr. Lim came right out and asked Plaintiff to his face, "how old are you," and then he indicated that Mr. Turney didn't appear or act that old, making negative referenced to older workers. He later remarked, relayed through a fellow company sales representative and the HR Manager, as he walked through the home offices in Elk Grove Village, Illinois, and said there sure are a lot of old people working here and for the company. Mr. Lim referenced Mr. Turney after he was fired as his "old friend of my age, Mr. Turney."

17.     All Presidents of Hyundai previous to Mr. Lim historically have been sent by its parent company, HHI in Korea, to serve as a four-year term as President. A new President was sent in 2008, but after two months, Mr. John Lim replaced this designated President and he was introduced as replacing the newly announced President, Mr. Sam Ji, of HCE USA Inc. HCE personnel were told, including Mr. Turney, not to say anything about this replacement until an official announcement was formulated, which occurred in or about May of 2008. No explanation was ever provided for the change. Mr. Sam Ji was re-announced as Vice President of HCE and shortly thereafter returned to Korea and Mr. Gillette was given his title.

18.     Mr. Turney was hired in or about October of 2003 by Mr. J. J. Kim and at that time was the only other existing field sales manager as was Mr. Stan Park, a Korean. All American or non-Korean national field sales managers had been fired or let go shortly after the millennium. In 2004, Mr. Turney attended a "bonding" party organized by Mr. James Kim. James was the assistant to the newly named President, Mr. Chuno Ma.  Mr. Kim took those present, along with Mr. Ma, to a topless club in San Antonio TX, during the American AED convention. Later, Mr. Turney learned that Mr. James Kim frequently downloaded pornography on the company's main computer drive in the Chicago office. This was reported to Mr. Turney by a coworker. Mr. Turney, seeking advice, reported this to a former consultant of the company who had discussions with Mr. J. J. Kim (former HCE President and person who hired Mr. Turney) from the parent company in

Korea, which indicated that Mr. James Kim had downloaded well over 100 pornographic videos and shared with Mr. Ma. Mr. J. J. Kim from Korea instructed Mr. Harry Kim to instruct Mr. Y. S. "Tony" Cho to clean the drive, but no adverse or disciplinary action was taken against any Korean employee. By 2008, Mr. Turney was the only remaining non-Korean employee of Hyundai (HCE USA Inc.) that was aware of those events. The company knew that Mr. Turney knew of the incident. In 2008, Mr. James Kim, who was returning to Korea after serving as assistant to the President and Sales Manager, told Mr. Turney during Con-Expo that "you too will be going home this year." Mr. Turney was unaware at that time that there was a plan to terminate or remove him from his job due to retaliation, age, and race. Mr. Turney has been the victim, as other Anglo Americans or non-Koreans of racial discrimination. HCE has never identified what jobs are open, only to Korean employees of the parent company, but it has not openly advertised for such positions. There are different job performance guidelines and expectations dependent on whether one is an American or Korean, or of Korean national origin or descent. No job descriptions are ever given or reviewed or open competition allowed for any positions when a Korean is or can be considered to fill the position.

19. On many occasions, Korean personnel would stop speaking English in Mr. Turney's presence and converse in Korean in a rude and inappropriate manner. Many times they would discuss matters that pertained to business in Mr. Turney's territory in Korean so that he would be unable to understand what they said.

20. Mr. Turney was required to submit documentation of his educational training and degrees, but Korean employees similarly situated were never required to do so. After Mr. Ma's departure, an outside consulting firm evaluated HCE and it was revealed through that process, that employees felt there were two different cultures, one for Americans and one for Koreans.

21. For five years after being hired by Mr. J.J. Kim, Mr. Turney managed the Western region that had produced less than $4 million in revenue in 2003, Mr. Turney

provided Hyundai with over $12 million in revenue per year from 2004 through 2008 and in excess of over $50 million during his tenure. Mr. Turney's customers and dealers were very happy with his performance abilities and his character. Upon Mr. Turney's information and belief, other former employees who have been subject to similar discriminatory treatment include; Mickey Hurr, Erik Wirjan, Dan Bergman, Cheryl Willis, Laura Crites, Matt Schultz, as well as Ron Butts.

## COUNT ONE

### (Title VII Race Discrimination)

22. Plaintiff incorporates and restates the allegations contained in paragraphs 1-21 as if fully set forth herein.

23. The employer is subject to the obligations imposed on it by Title VII of the Civil Rights Act of 1964 as amended prohibiting disparate treatment of persons on the basis of impermissible considerations in the terms, conditions and privileges of employment.

24. Plaintiff has been subjected to disparate treatment by agents and employees of Defendants.

25. Plaintiff is a member of a protected class, i.e., he is an Anglo American over the age of 40.

26. Plaintiff was denied opportunities based on the actions of Defendants.

27. Defendant had no legitimate non-discriminatory reason for firing Plaintiff.

28. A motivating factor in Defendants' decision to terminate Plaintiff was impermissible race discrimination.

29. Plaintiff was subjected to disparate treatment.

30. By virtue of the foregoing, Defendants violated the prohibition against discrimination based on race as set forth in Title VII of the 1964 Civil Rights Act.

## COUNT TWO

### (Age Discrimination in Violation of ADEA)

31. Plaintiff incorporates and restates the allegations contained in paragraphs 1-30 as if fully set forth herein.

32. Plaintiff has been the victim of direct discrimination based upon his age. The President of HCE, Mr. John Lim, made direct statements to Plaintiff referencing his age – old – and further engaged in a pattern of other statements evidencing a strong negative attitude toward HCE having so many older employees, including Plaintiff, and actions evidencing "odd, unusual, and discriminatory behavior" toward Plaintiff and other older workers, evidencing a pervasive bias against and negative attitude toward mature and experienced workers, including Plaintiff.

33. Upon information and belief, Defendant John Lim's comments and behavior are typically of insensitive, erratic, unpredictable, and impulsive decisions based on improper, unfounded, and illegal motives of Mr. Lim and that such actions by Defendant Lim have occurred on a regular, yet unpredictable, basis since his assuming the Presidency of HCE in 2008.

34. Upon information and belief, the decision to terminate Plaintiff was made by Mr. John Lim and that it was made for impermissible reasons based upon Plaintiff's age and factors related to his age.

35. During the week of October 5, 2008, Mr. Lim displayed a lack of knowledge of the heavy equipment industry and made numerous off-hand, inappropriate, and insensitive comments in front of Mr. Turney, dealers, and others.

36. The decision to terminate or "lay off" Plaintiff was based in part on his age, over 40. Plaintiff was told he was being terminated for non-performance related reasons, but he had learned that Defendants replaced him with a younger, less experienced, less qualified person with fewer qualifications and that such decision was motivated by Plaintiff's age.

## COUNT THREE

### (Violation of Arizona Civil Rights Act, A.R.S. § 41-1461, et. seq.)

37. Plaintiff incorporates and restates the allegations contained in paragraphs 1-36 as if fully set forth herein.

38. Plaintiff is entitled to damages according to Arizona Civil Rights Act as they differ from and are not limited as are remedies under Title VII.

39. Defendants' actions constitute violations of the Arizona Civil Rights Act and John Lim's conduct in particular evidenced a deliberate indifference to the requirements of Title VII, ADEA, and the Arizona Civil Rights Act and such conduct was pursued with malice and evil intent entitling Plaintiff to recover exemplar damages.

## COUNT FOUR

### (Breach of the Covenant of Good Faith and Fair Dealing)

40. Plaintiff incorporates and restates the allegations contained in paragraphs 1-39 as if fully set forth herein.

41. Every employment contract in the State of Arizona has included in them an implied covenant of good faith and fair dealing.

42. Plaintiff has suffered damages as a result of Defendants' breach of the covenant of good faith and fair dealing.

**WHEREFORE**, based upon the foregoing, Plaintiff demands judgment in its favor and against Defendants as follows:

A. Awarding Plaintiff general damages in an amount to be determined at trial, but in no event less than the minimum jurisdictional amount of this case, and in no case less than the sum for all damages of $1,100,000, plus interest accruing at the maximum legal rate;

B. Awarding Plaintiff all costs incurred in this action;

C. Award attorneys' fees under 20 U.S.C. § 1988 in a reasonable amount; and

D.   Awarding Plaintiff such other and further relief as this Court deems just and proper.

DATED this 30th day of March, 2009.

                    LAW OFFICE OF GARY L. LASSEN, PLC

                    By:   /s/ Gary L. Lassen  
                          Gary L. Lassen (5259)  
                          2020 North Central Avenue  
                          Central Park Square, Suite 1100  
                          Phoenix, AZ 85004  
                          Attorney for Plaintiff

I hereby certify that on the 30th day of March, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

By:   /s/Lisa Balbini